| UNITED STATES DISTRICT COURT | EASTERN DISTRICT OF TEXAS |
|---|---|

UNITED STATES OF AMERICA          §
                                  §
*versus*                          §    CASE NO. 9:16-CR-008
                                  §
CESAR HERNANDEZ                   §

**MEMORANDUM AND ORDER**

Pending before the court is Defendant Cesar Hernandez's ("Hernandez") Motion for Compassionate Release/Reduction in Sentence Under 18 U.S.C. § 3582(c)(1)(A) (#272), wherein he requests that the court release him from imprisonment for "extraordinary and compelling reasons." Specifically, Hernandez claims his release is warranted due to his compromised medical condition, prison officials' inadequate and delayed management of his health conditions, the length of time he has been incarcerated, his rehabilitation while incarcerated, and his suffering extremely harsh prison conditions throughout the COVID-19 pandemic ("COVID-19").[1] The Government filed a response in opposition (#293). After conducting an investigation, United States Probation and Pretrial Services ("Probation") recommends denying the motion. Having considered the motion, the Government's response, Probation's recommendation, the record, and the applicable law, the court is of the opinion that the motion should be denied.

---

[1] In addition to his motion, Hernandez filed a Motion to Include Supplemental Facts in Support of Compassionate Release (#273), in which he requests that the court consider an attached report from the Office of the Inspector General ("OIG") concerning an inspection of Federal Medical Center, Devens ("FMC Devens"). The court will consider Hernandez's evidence in its evaluation of his motion for compassionate release but finds it to be of little relevance because he is no longer housed at FMC Devens. Accordingly, Hernandez's Motion (#273) is granted.

I.    Background

On March 16, 2016, a federal grand jury in the Eastern District of Texas returned a three-count Indictment, charging Hernandez in Count One with Conspiracy to Distribute and to Possess with Intent to Distribute a Schedule II Controlled Substance, in violation of 21 U.S.C. § 846, in Count Two with Conspiracy to Commit Kidnapping, in violation of 18 U.S.C. § 1201(c), and in Count Three with Possession of a Firearm in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii).  Hernandez pleaded guilty to Count One of the Indictment on October 4, 2016, pursuant to a non-binding plea agreement.  On March 7, 2017, the court sentenced Hernandez to 188 months' imprisonment, followed by a five-year term of supervised release.  He did not appeal his conviction or sentence.

On October 1, 2021, Hernandez filed a Motion for Compassionate Release (#256), wherein he contended that his medical conditions, including diabetes, hypertension (high blood pressure), and chronic kidney disease, placed him at an increased risk of severe health consequences and death if he contracted COVID-19.  The court denied his motion on May 26, 2022, finding that no extraordinary and compelling reasons existed in relation to Hernandez's situation.  Specifically, the court found that none of Hernandez's medical conditions were terminal or substantially diminished his ability to provide self-care.  While acknowledging that some of Hernandez's underlying conditions could make him more likely to become severely ill should he contract COVID-19, the court concluded that such commonplace maladies do not make his case "extraordinary."  Moreover, Hernandez did not establish that the Bureau of Prisons ("BOP") could not manage an outbreak within his correctional facility or that the facility was specifically unable to treat Hernandez if he were to contract the virus while incarcerated.  The court

2

additionally opined that, in view of the circumstances surrounding his offense of conviction and his criminal history, it could not conclude that Hernandez would not pose a danger to any other person or to the community if released from prison. Thus, the court denied Hernandez's motion for compassionate release. Hernandez filed the present motion on October 7, 2024.

Hernandez was previously housed at FMC Devens, located in Ayer, Massachusetts. According to the online BOP inmate locator, Hernandez now resides at a halfway house monitored by the Residential Reentry Management ("RRM") Center for the San Antonio, Texas, area. Hernandez is still serving his sentence and remains in the custody of the BOP. *See* 18 U.S.C. § 3624(c)(1)-(2). His projected release date is October 6, 2028.

II.     Analysis

    A.     Controlling Law

A judgment of conviction that imposes a sentence of imprisonment is a "'final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *accord Freeman v. United States*, 564 U.S. 522, 526 (2011); *see* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A) embodies a rare exception to a conviction's finality. This statute gives the court discretion, in certain circumstances, to reduce a defendant's term of imprisonment. The First Step Act of 2018 ("the Act"), Pub. L. No. 115-391, 132 Stat. 5194, in part, amended 18 U.S.C. § 3582(c)(1)(A), which currently provides:

> (A) the court, upon motion of the Director of the Bureau of Prisons [("BOP")], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or

3

without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a)[2] to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [BOP] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). This provision is commonly referred to as "compassionate release." *See, e.g.*, *United States v. Escajeda*, 58 F.4th 184, 186 (5th Cir. 2023) ("We often refer to this as 'compassionate release' because courts generally use it for prisoners with severe medical exigencies or infirmities.").

Rather than define "extraordinary and compelling reasons," Congress elected to delegate its authority to the United States Sentencing Commission ("Commission"). *See* 28 U.S.C. § 994(t) (directing the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples"); *United States v. Jean*, 108 F.4th 275, 278 (5th Cir. 2024), *abrogated on other*

---

[2] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") provisions and policy statements; any pertinent policy statement of the United States Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

grounds by *United States v. Austin*, 125 F.4th 688, 692 (5th Cir. 2025); *United States v. Jackson*, 27 F.4th 1088, 1090 (5th Cir. 2022); *United States v. Cooper*, 996 F.3d 283, 287 (5th Cir. 2021); *United States v. Shkambi*, 993 F.3d 388, 392 (5th Cir. 2021).  Although the Commission issued a policy statement prior to the passage of the Act that described the reasons that qualify as extraordinary and compelling, that policy statement referenced only those motions filed by the Director of the BOP—thus, the United States Court of Appeals for the Fifth Circuit and other courts held that it was inapplicable to motions filed by defendants on their own behalf.  *See Jackson*, 27 F.4th at 1090; *Cooper*, 996 F.3d at 287-88; *Shkambi*, 993 F.3d at 392.

Effective November 1, 2023, the Commission—responding to, among other things, the Act—amended the Guidelines to extend the applicability of the policy statement set forth in U.S.S.G. § 1B1.13 to defendant-filed motions and to broaden the scope of what qualifies as "extraordinary and compelling" reasons potentially warranting compassionate release.  *See* U.S.S.G. § 1B1.13.  Section 1B1.13(b), as amended, identifies six categories of circumstances that may qualify as "extraordinary and compelling."  *Id*. § 1B1.13(b).  These categories are:

(1)    the medical circumstances of the defendant;

(2)    the age of the defendant;

(3)     the family circumstances of the defendant;

(4)    whether the defendant was a victim of abuse while in custody;

(5)    other reasons similar in gravity to those previously described; and

(6)    an unusually long sentence.

*Id*. § 1B1.13(b)(1)-(6).

As a result, a prisoner seeking compassionate release on his own motion must satisfy the following hurdles:

(1)     the defendant must have exhausted his administrative remedies;

(2)     "extraordinary and compelling reasons" must justify the reduction of his sentence or he must satisfy the requirements of § 3582(c)(1)(A)(ii);

(3)     the reduction must be consistent with the Commission's applicable policy statements; and

(4)     the defendant must convince the court to exercise its discretion to grant the motion after considering the § 3553(a) factors.

*Jackson*, 27 F.4th at 1089; *Shkambi*, 993 F.3d at 392; *accord United States v. Rollins*, 53 F.4th 353, 358 (5th Cir. 2022); *see Austin*, 125 F.4th at 692.

B.     Exhaustion of Administrative Remedies

Section 3582(c)(1)(A)'s plain language makes it clear that the court may not grant a defendant's motion for compassionate release unless the defendant has complied with the administrative exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A); *United States v. Garrett*, 15 F.4th 335, 337 (5th Cir. 2021) ("[T]o file a proper motion for compassionate release in the district court, a prisoner must first exhaust the available administrative avenues."); *United States v. Franco*, 973 F.3d 465, 467 (5th Cir. 2020) (holding that the statutory requirement that a defendant file a request with the BOP before filing a motion for compassionate release in federal court "is *not* jurisdictional, but that it *is* mandatory").  The exhaustion requirement applies whether the motion is styled as one for compassionate release or merely for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A).  Accordingly, before seeking relief from the court, a defendant must first submit a request to the warden of his facility to move for compassionate release on his behalf and then either exhaust his administrative remedies or wait for the lapse of 30 days after the warden

6

received the request. 18 U.S.C. § 3582(c)(1)(A); *Garrett*, 15 F.4th at 338 ("[A]n inmate has two routes by which he may exhaust his administrative remedies. Both begin with 'requesting that the [BOP] bring a motion on the defendant's behalf.'" (quoting *Franco*, 973 F.3d at 467)).

Although this requirement is said to be mandatory, the Fifth Circuit has treated it as "a nonjurisdictional claim-processing rule." *Franco*, 973 F.3d at 468. "Mandatory but nonjurisdictional procedural filing requirements may be waived." *United States v. McLean*, Nos. 21-40015, 21-40017, 2022 WL 44618, at *1 (5th Cir. Jan. 5, 2022); *see United States v. Harden*, No. 4:11-CR-127-SDJ, 2025 WL 562716, at *5 (E.D. Tex. Feb. 20, 2025). Therefore, if the Government fails to "invoke § 3582(c)(1)(A)'s exhaustion requirement as a basis for denying relief," that argument is deemed waived. *McLean*, 2022 WL 44618, at *1.

A defendant's motion for compassionate release must be based on the same circumstances as those raised in his request for release to the warden of the facility where he is housed. *United States v. Dodd*, No. 4:13-CR-182-SDJ, 2020 WL 7396527, at *2 (E.D. Tex. Dec. 17, 2020) (stating that "[i]n order to exhaust her administrative remedies, a prisoner must first present to the BOP the same grounds warranting release that the prisoner urges in her motion"); *accord United States v. York*, No. 4:07-CR-181-SDJ, 2025 WL 1397198, at *2-3 (E.D. Tex. May 14, 2025); *United States v. Thomas*, No. 4:19-CR-28-SDJ, 2023 WL 5279457, at *5 (E.D. Tex. Aug. 16, 2023) (citing *United States v. Mendoza-Garibay*, No. 4:13-CR-00281, 2023 WL 307459, at *1 (E.D. Tex. Jan. 18, 2023)). Hence, the facts asserted in an inmate's request to the warden and in his motion for compassionate release must be consistent. *United States v. Scott*, No. CR 17-114, 2024 WL 2187849, at *2 (E.D. La. May 14, 2024); *see United States v. Gonzalez*, 849 F. App'x 116, 117 (5th Cir. 2021). Further, "the exhaustion requirement applies to new

arguments or grounds for compassionate release developed after an earlier request for compassionate release." *United States v. Cantu*, No. 7:17-cr-01046-2, 2022 WL 90853, at *1 (S.D. Tex. Jan. 5, 2022) (citing *United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020)); *accord Mendoza-Garibay*, 2023 WL 307459, at *2.

In this case, the Government argues that Hernandez failed to comply with § 3582(c)(1)(A)'s exhaustion requirement regarding several of his claims. On August 23, 2024, Hernandez submitted an Inmate Request for Compassionate Release Consideration addressed to "Medical Social Work," wherein he requested a sentence reduction based on his various ailments—specifically, diabetes, kidney failure, high blood pressure, and legal blindness. On September 13, 2024, Warden F. J. Bowers of FMC Devens denied Hernandez's request, addressing his health concerns and noting that Hernandez is "independent with [his] activities of daily living" and that "FMC Devens is able to manage [his] health needs at this time." Hernandez subsequently filed his motion for compassionate release on October 7, 2024. While the Government agrees that Hernandez has exhausted his administrative remedies with respect to the aforementioned medial conditions, it argues that the court should not consider new, un-exhausted issues raised for the first time in the motion, such as (1) previously undisclosed medical conditions, (2) harsh prison conditions, and (3) the extent of the prison term that Hernandez has already served.

The court agrees that Hernandez appears to have exhausted his administrative remedies, at least in part. To the extent that Hernandez alleges diabetes, kidney failure, high blood pressure, and legal blindness as bases for his motion, the court will consider these claims as having been exhausted. Hernandez is foreclosed, however, from obtaining relief on the additional grounds asserted in his motion because he failed to present those claims to the warden in his initial request.

Those grounds include risks posed to him by the COVID-19 pandemic, unthinkably harsh prison conditions, service of the "lion's share" of his sentence, and medical conditions such as edema, anemia, hypothyroidism, vitamin D deficiency, age-related cataract, liver steatosis, and dermatitis. Nevertheless, while Hernandez may have complied with the exhaustion requirement, at least in part, before filing his motion for compassionate release, nothing in the motion indicates that extraordinary and compelling reasons exist to release him from confinement.

      C.    <u>Criteria for Compassionate Release</u>

      1.    <u>Medical Circumstances</u>

In the pending motion, Hernandez, age 49, contends that he is eligible for compassionate release due to his medical conditions. Specifically, Hernandez asserts that he was diagnosed in early 2024 with end-stage kidney disease and must rely on regular dialysis treatment to sustain his life. Moreover, Hernandez maintains that he was diagnosed in late 2020 with a degenerative eye condition and cataract. Hernandez argues that "[a]s a direct result of the [BOP's] delay in his 'urgent' need for treatment, [he] suffered permanent and irreversible loss of vision." Consequently, he is now legally blind and "requires more eye surgeries to preserve what little vision he has left." Hernandez also claims that he suffers from Type II diabetes and hypertension. Hernandez, therefore, contends that his circumstances qualify as extraordinary and compelling reasons warranting his release.

With respect to a defendant's medical circumstances, § 1B1.13(b)(1)(A) of the United States Sentencing Guidelines state that extraordinary and compelling reasons exist if the defendant's motion presents the following circumstance:

    (A)    The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life

expectancy (*i.e.*, a probability of death within a specific time period) is not required.  Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-state organ disease, and advanced dementia.

U.S.S.G. § 1B1.13(b)(1)(A).  Regarding Hernandez's diabetes, high blood pressure, and eyesight problems, this provision is clearly inapplicable, as none of these medical conditions are terminal in Hernandez's case.  To the contrary, these conditions are commonplace and are well managed with medication, treatment, and monitoring.  Hernandez's end-stage kidney failure, however, is a closer call.  While end-stage kidney disease qualifies as terminal, nothing in Hernandez's medical records suggests that his demise is imminent or that he is on an end-of-life trajectory.  At FMC Devens, Hernandez received consistent treatment through medication and dialysis and has been evaluated by medical staff numerous times to adjust the prescribed doses, as needed.  He appears to still be receiving appropriate medical treatment while at the halfway house.  Hernandez accordingly fails to demonstrate that his medical disorders constitute extraordinary and compelling reasons warranting compassionate release under § 1B1.13(b)(1)(A).

Hernandez's medical condition likewise fails to satisfy the criteria under § 1B1.13(b)(1)(B).  This provision applies when:

(B)    The defendant is—

(i)    suffering from a serious physical or medical condition,

(ii)   suffering from a serious functional or cognitive impairment, or

(iii)  experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

10

U.S.S.G. § 1B1.13(b)(1)(B). Here, none of Hernandez's medical problems substantially diminish his ability to provide self-care within the context of a correctional facility, as evidenced by the extensive medical care and resources provided to him at FMC Devens. Moreover, now that Hernandez has been released to a halfway house, the court has no reason to conclude that he is not receiving adequate care, as he has not supplemented his motion or provided information to the contrary.[3] *See United States v. Miranda-Rojas*, No. CR 12-256 (SCC)(HRV), 2024 WL 2208209, at *3 (D.P.R. May 16, 2024) (denying compassionate release where, following a custody change, defendant did not supplement his motion to assert that his current medical conditions still represent a risk to his health or that they substantially diminish his ability to provide self-care); *United States v. Neal*, No. 117CR00300DADBAM, 2024 WL 1886476, at *4 (E.D. Cal. Apr. 30, 2024) (holding that arguments regarding COVID-related circumstances were rendered moot when defendant was transferred to the RRM and he did not file supplemental briefing). In fact, before he was placed at the halfway house, Hernandez's medical records reflect that he was able to apply for Supplemental Security Income benefits as well as Medicare through the BOP. Hernandez was also approved and scheduled for dialysis at a facility in nearby Kyle, Texas. His medical records indicate that his son, who lives in Kyle, would be able to drive him to his appointments. Hernandez's first treatment was scheduled for December 24, 2025, and he was to undergo dialysis every Tuesday, Thursday, and Saturday thereafter. In addition, it appears that arrangements were made to provide him with a supply of his medication upon discharge from FMC Devens, as well as a copy of his medical records. Thus, even in the absence of supplemental information from

---

[3] The most recent medical records received by the court from the BOP are dated December 19, 2025, when Hernandez was still housed at FMC Devens.

Hernandez, the record reflects that the BOP arranged for appropriate, ongoing medical care. The court therefore concludes that Hernandez's circumstances do not warrant compassionate release under § 1B1.13(b)(1)(B).

Hernandez is similarly ineligible for compassionate release under § 1B1.13(b)(1)(C), which provides that extraordinary and compelling reasons exist when:

> (C)     The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

U.S.S.G. § 1B1.13(b)(1)(C). Again, Hernandez is now under the supervision of an RRM, rendering moot his arguments concerning the care available at FMC Devens. Further, Hernandez's medical records demonstrate that all of his conditions are manageable with medication, treatment, and monitoring. There is no evidence or allegation that Hernandez is not receiving this care at his current location. Thus, compassionate release is not appropriate under § 1B1.13(b)(1)(C).

### 2.     Rehabilitation

Hernandez maintains that his post-sentence rehabilitation, evidenced by the courses he has taken and the programs he has completed, establishes extraordinary and compelling reasons for compassionate release. Hernandez's record reflects that he has completed several educational courses, including those related to parenting, refrigeration, spinning, and earning a commercial driver's license. In addition, Hernandez completed a drug education program. Regarding rehabilitation of the defendant, the Guidelines recognize: "Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the

sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d); *accord United States v. Martinez*, No. 23-50418, 2024 WL 658952, at *1 (5th Cir. Feb. 16, 2024) ("Even if [the defendant] were reformed, his rehabilitation efforts alone are not an extraordinary and compelling reason for release."); *United States v. Handlon*, No. 23-50386, 2024 WL 111787, at *1 (5th Cir. Jan. 10, 2024) (holding that the defendant's "rehabilitation efforts alone are not an extraordinary and compelling reason for his release").

Hence, while the court may consider rehabilitation efforts, "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *accord United States v. Rios*, No. 24-673-cr, 2025 WL 841862, at *2 (2d Cir. Mar. 18, 2025); *United States v. Black*, 131 F.4th 542, 544 (7th Cir. 2025); *see United States v. Cordoba*, No. 24010599, 2025 WL 799354, at *1 (5th Cir. Mar. 13, 2025); *Shkambi*, 993 F.3d at 392; *United States v. Hudec*, No. CR 4:91-1-1, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 19, 2020) ("While the Court is permitted to consider post-sentencing rehabilitation in determining whether to grant an eligible defendant a sentence reduction, it is not authorized to grant a reduction based upon post-sentencing rehabilitation alone."). In fact, "[m]aking good use of one's time in prison is not uncommon, and indeed is expected." *United States v. Blanco*, No. 16-CR-408 (CS), 2021 WL 706981, at *2 (S.D.N.Y. Feb. 22, 2021) (quoting *United States v. Alvarez*, No. 89-CR-229, 2020 WL 4904586, at *7 (E.D.N.Y. Aug. 20, 2020)); *see United States v. Alimehmeti*, No. 16-CR-398 (PAE), 2024 WL 4880197, at *8 (S.D.N.Y. Nov. 25, 2024) (recognizing that some amount of rehabilitative effort is expected of inmates and holding that completion of educational courses and doing productive work while incarcerated did not justify early release). Further,

13

"making good use of one's time in prison and regretting one's actions are not grounds for sentence reductions under the First Step Act." *United States v. Polnitz*, No. 17-cr-201-pp, 2020 WL 1139836, at \*2 (E.D. Wis. Mar. 9, 2020).  In any event, in *United States v. Comb*, the court found a BOP log listing a defendant's participation in rehabilitative programs similar to that referenced by Hernandez to be "wholly inadequate" for concluding that the defendant's rehabilitation was "beyond or out of the common order."  No. H-13-0575-06, 2025 WL 240954, at \*3 (S.D. Tex. Jan. 17, 2025) (quoting *Escajeda*, 58 F.4th at 186), *aff'd*, 2025 WL 603881 (5th Cir. Feb. 25, 2025).

Furthermore, Hernandez has a record of committing disciplinary violations while housed at the BOP.  Hernandez's disciplinary records reflect that he has been sanctioned for the following infractions:  on April 10, 2024, Hernandez was cited for being insolent to a staff member; on February 7, 2023, January 13, 2023, and  December 6, 2022, Hernandez was cited for refusing work assignments; on July 15, 2022, Hernandez was cited for possessing a hazardous tool; on November 7, 2019, Hernandez was cited for possessing an unauthorized item; and on March 14, 2019, Hernandez was cited for being in an unauthorized area.  Moreover, the fact that Hernandez has been placed in a halfway house does not mean that he has been rehabilitated.  In fact, placement at a halfway house is a critical part of the rehabilitation process, allowing individuals to reintegrate into the community gradually.  "This structured transition is essential to promote stability, accountability, and the best opportunity for [an individual's] success on supervised release." *United States v. Vo*, No. 4:19-CR-309-ALM-BD-1, 2025 WL 3083076, at \*7 (E.D. Tex. Nov. 4, 2025).  In any event, Hernandez has failed to demonstrate that any other circumstances warrant a reduction in his term of imprisonment.  Thus, even if the court were to

conclude that Hernandez had been successfully rehabilitated, this fact, without more, does not merit compassionate release.  U.S.S.G. § 1B1.13(d) (citing 28 U.S.C. § 994(t)).  While the court hopes that Hernandez will continue on the path to rehabilitation, it declines to exercise its discretionary authority under § 3582 at this time based on either Hernandez's medical condition or his rehabilitation efforts.

D.    Section 3553(a) Factors

The court further finds that compassionate release is not merited in light of the applicable factors set forth in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3582(c)(1)(A) (requiring courts to consider the § 3553(a) factors before granting compassionate release); *United States v. Chavez*, No. 23-50684, 2024 WL 940263, at *1 (5th Cir. Mar. 5, 2024); *Rollins*, 53 F.4th at 358-59; *United States v. Shorter*, 850 F. App'x 327, 328 (5th Cir. 2021) (finding that the court did not abuse its discretion in denying compassionate release after balancing the § 3553(a) factors); *United States v. Keys*, 846 F. App'x 275, 276 (5th Cir. 2021); *Shkambi*, 993 F.3d at 392; *United States v. Thompson*, 984 F.3d 431, 435 n.11 (5th Cir. 2021) (collecting cases); *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020).  Section 3553(a)(1) requires the court to consider the nature and circumstances of the defendant's offense of conviction as well as the history and characteristics of the defendant.  18 U.S.C. § 3553(a)(1).  Here, neither the nature of Hernandez's offense of conviction nor his history and characteristics warrant a sentence reduction.

The nature and circumstances of Hernandez's offense of conviction entail his participation in a multi-state, drug-trafficking conspiracy.  The Presentence Investigation Report ("PSR") indicates that, beginning in 2013, agents with the U.S. Drug Enforcement Administration ("DEA") began actively investigating a drug trafficking organization led by Hernandez

("Hernandez DTO"). The Hernandez DTO, based out of Diboll, Texas, was involved in the distribution of powder cocaine, in kilogram quantities, to Lufkin, Texas, Shreveport, Louisiana, Alexandria, Louisiana, and Pine Bluff, Arkansas. The Hernandez DTO used couriers to transport cocaine to these locations. As part of the conspiracy, Hernandez traveled in personal vehicles to Mexico, South Texas, and Louisiana to facilitate the transportation and delivery of the cocaine and the collection of drug proceeds. He also used couriers to transport cocaine from the San Antonio, Texas, area to other locations in Texas and Louisiana, approximately every seven to ten days.

During the investigation, agents learned that Hernandez met with Cooperating Individual One ("CI One"), and exchanged kilogram quantities of cocaine for United States currency. Investigators determined that Hernandez and his co-conspirators had been providing kilogram quantifies of powder cocaine for $30,000 per kilogram to CI One every two weeks since 2011. On June 6, 2013, Hernandez was observed arriving at CI One's residence in his pickup truck. Agents then observed Hernandez walk out of the residence carrying a white plastic bag. After he left the residence, Hernandez was stopped by officers of the Diboll Police Department. During a search of Hernandez's vehicle, officers located $14,680 in U.S. currency in the white plastic bag.

Cooperating Individuals Two ("CI Two") and Three ("CI Three") were couriers for the Hernandez DTO in 2013. CI Two said he was directed by Hernandez to travel to San Antonio to pick up 5 to 7 kilograms of cocaine on a weekly basis. He would transport the cocaine to Lufkin, Texas, and distribute it to couriers named Chris Atkins in Shreveport, Louisiana, and Jason Smith in Alexandria, Louisiana. CI Three would accompany CI Two on the trips to distribute narcotics and collect proceeds. Cooperating Individual Four ("CI Four") was also a courier for the

Hernandez DTO.  CI Four was responsible for picking up multi-kilogram quantities of cocaine from the Hernandez DTO supplier in San Antonio and transporting it to Lufkin and Alexandria. In late 2013, Hernandez moved from Diboll to Eagle Pass, Texas, and instructed CI Four to coordinate shipments with the Hernandez DTO customers in Shreveport and Alexandria.  CI Four communicated with Hernandez until the summer of 2015 about coordinating shipments of cocaine from the Eastern District of Texas and surrounding areas.

Alejandro Garcia ("Garcia") was also a courier for the Hernandez DTO.  On November 14, 2013, Garcia transported 1 kilogram of cocaine from Lufkin to Pine Bluff to deliver to a courier known as Danny.  During the meeting, Danny, who was accompanied by an individual identified as C.H.J.,  pulled a firearm on Garcia and robbed him of the kilogram of cocaine.  After hearing about the incident, Hernandez indicated to his couriers that he wanted either the money or the drugs.   Although investigators received conflicting accounts, the couriers allegedly understood that Hernandez instructed them to bring someone back to Lufkin in retaliation for the robbery.  Accordingly, Garcia and other armed co-conspirators took C.H.J. from his apartment to a motel in Pine Bluff, where they assaulted him and demanded information about Danny.  Later, the co-conspirators decided to transport C.H.J. to Lufkin and forced him into a vehicle. According to C.H.J., a gun was pointed at him throughout the entirety of the kidnapping.  While driving, however, the co-conspirators became disoriented and inadvertently traveled to Lake Providence, Louisiana.  When some of the co-conspirators transporting C.H.J. went inside a store in Lake Providence, C.H.J. managed to escape from the vehicle.  The co-conspirators at the scene were arrested.

On June 17, 2014, officers witnessed one of Hernandez's couriers, Roman Castillo ("Castillo") and the 15-year-old son of one of Hernandez's co-conspirators make a delivery to a known narcotics customer of the Hernandez DTO. The 15-year-old was observed carrying a backpack as he entered the residence of CI One. Shortly after leaving the residence, the 15-year-old and Castillo were stopped by an officer from the Lufkin Police Department. During a search of the vehicle, officers located $30,060 in U.S. currency in a backpack belonging to the juvenile. CI One reported that the currency was payment for 2 kilograms of cocaine purchased from the Hernandez DTO.

In addition to the nature and circumstances of his offenses of conviction, Hernandez's criminal history similarly demonstrates that he poses a danger to the community. Hernandez has been convicted of delivery of marijuana, reckless driving, and conspiracy to transport illegal aliens. He was also arrested for public intoxication. Moreover, Hernandez was involved in the instant offense while released on bond for a prior felony offense. Hernandez additionally has a history of poly-substance abuse, including the use of alcohol, marijuana, and cocaine. Further, as mentioned above, Hernandez has a record of disciplinary violations at the BOP, including being insolent to a staff member, refusing a work assignment (3x), possessing a hazardous tool, possessing an unauthorized item, and being in an unauthorized area.

In support of his motion, Hernandez points to his low PATTERN score to indicate that he poses a low risk for recidivism or violence. The court is not persuaded, however, that Hernandez is no longer a danger to the community. Courts have long recognized that "continued drug dealing does constitute a danger and threat to the community." *United States v. Hare*, 873 F.3d 796, 799 (5th Cir. 1989); *accord United States v. Grimaldo*, No. 4:08-CR-107-SDJ, 2022 WL 4126106,

at *7 (E.D. Tex. Sept. 9, 2022) (denying compassionate release to inmate found guilty of participating in a drug trafficking conspiracy involving large amounts of cocaine and marijuana despite his completion of numerous programs and saving his cellmate's life by performing CPR, reasoning that he continues to pose a danger to the community based on the totality of the circumstances); *United States v. Dotrey*, No. 2:13-CR-004, 2021 WL 4191454, at *8 (E.D. Tex. Sept. 15, 2021) (denying compassionate to drug trafficker despite his insistence that his offense was non-violent, he had been rehabilitated, and he had been rated by the BOP as having a low risk of recidivism). "Although a defendant may not have been convicted of a violent crime, 'that does not make his offense any less serious or dangerous to the community.'" *United States v. Thomas*, No. 14-246, 2021 WL 1721014, at *3 (E.D. La. Apr. 30, 2021) (quoting *United States v. Bailey*, No 17-244, 2020 WL 6701533, at *3 (E.D. La. Nov. 13, 2020)); *see also United States v. Leon*, 766 F.2d 77, 81 (2d Cir. 1985) ("The harm to society caused by narcotics trafficking is encompassed within Congress' definition of 'danger.'").

Regarding Hernandez's medical condition, although the court recognizes that kidney failure is considered serious, "compassionate release is discretionary, not mandatory, and [may] be refused after weighing the sentencing factors of 18 U.S.C. § 3553(a)." *Chambliss*, 948 F.3d at 693; *see Rollins*, 53 F.4th at 358-60 (upholding the denial of compassionate release of the defendant, who suffered from a "dire" medical situation stemming from a gunshot wound that required the amputation of his right leg and left him paralyzed, but deferring to the district court's balancing of the § 3553(a) factors, including the defendant's "history, the serious nature of his offense, and the danger his release would pose to the community at-large"); *United States v. Gharib*, No. 21-40779, 2022 WL 1565352, at *1 (5th Cir. May 18, 2022). In *United States v.*

19

*McKinney*, the court denied relief to a prisoner who had end-stage renal failure and had a portion of his foot amputated despite the Government's concession that the defendant had established an "extraordinary and compelling reason" within the meaning of § 3582(c)(1)(A)(i), finding that "granting compassionate release would not comport with the factors enumerated in Section 3553(a)." No. 19-00394-03, 2023 WL 2993020, at *1, 3 (W.D. La. Apr. 18, 2023). The court pointed to McKinney's extensive criminal history that included several drug convictions, firearm convictions, and simple battery. *Id*. at *3. The court concluded that a reduction in sentence would not equate to a "just punishment" under § 3553(a)(2)(A). The court expounded: "It is this court's belief that a reduced sentence simply would not reflect the seriousness of the offense, would not promote respect for the law, would not afford adequate deterrence to criminal conduct, and would not protect the public from further crimes of this Defendant." *Id.* This court holds the same belief in the case at bar. In view of the nature and circumstances of his offense of conviction and his criminal history, the court cannot conclude that a reduction in Hernandez's sentence would afford adequate deterrence or protect the public, as he continues to pose a danger to other persons and to the community as a whole. As in *McKinney*, the § 3553(a) factors do not support Hernandez's release.

On balance, compassionate release is not warranted in this case in light of the applicable factors set forth in § 3553(a). As the court noted in *United States v. Preston*, "[t]he best predictor of how [Defendant] will behave if he were to be released is how he has behaved when released in the past, and his track record is a poor one." No. 3:18-CR-307-K, 2020 WL 1819888, at *4 (N.D. Tex. Apr. 11, 2020) (quoting *United States v. Martin*, 447 F. Supp. 3d 399, 403 (D. Md. 2020)). Here, Hernandez's track record is similarly a poor one. In this instance, there is no

reason to believe that Hernandez would not revert to his prior drug-trafficking activities if released from BOP supervision at this juncture. *See United States v. Wymer*, 573 F. Supp. 3d 1208, 1212 (N.D. Ohio 2021). Hernandez's past behavior gives grave cause for concern as to his future conduct. Like the court in *United States v. Lewis*, this court concludes that "Defendant's current term of imprisonment was and remains appropriate." No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021). Hernandez committed a serious offense that justified his sentence, and the circumstances he now identifies do not render his sentence unjust or inequitable. *See id.*

IV.    Conclusion

The court agrees with Probation's assessment of this case and its recommendation that the court deny Hernandez's motion for compassionate release. Hernandez has failed to satisfy his burden of showing the necessary circumstances to warrant relief under the statutory framework to which the court must adhere. The 188-month sentence of imprisonment imposed upon him for his drug conspiracy offense comports with the 18 U.S.C. § 3553(a) factors, and he has adduced no extraordinary and compelling reasons to lessen his sentence or release him from BOP oversight at this time.

In accordance with the foregoing analysis, Hernandez's Motion for Compassionate Release/Reduction in Sentence Under 18 U.S.C. § 3582(c)(1)(A) (#272) is DENIED.

SIGNED at Beaumont, Texas, this 9th day of February, 2026.

*Marcia A. Crone*
_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE